# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTHCAROLINA
# STATESVILLE DIVISION
# 5:14-cv-162-RJC

| | |
|---|---|
| ROSETTA SANDANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 13, 14); and Defendant's Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 15, 16).

## I. BACKGROUND

### A. Procedural Background

Plaintiff Rosetta Sandano ("Plaintiff") seeks judicial review of Defendant's denial of her Social Security claim. (Doc. No. 1). On February 12, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 405, et seq. Plaintiff also filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1383 et seq. In both applications, Plaintiff alleged an inability to work due to disabling conditions beginning on June 1, 2012. (Doc. Nos. 10 to 10-8: Administrative Record ("Tr.") at 36, 74, 192). The Commissioner initially denied Plaintiff's application for SSI on February 20, 2013, (Tr. 106–10), and her application for DIB on

April 29, 2013, (Tr. 88–91). Her SSI claim was denied upon reconsideration on April 21, 2013, (Tr. 94–97), and her DIB claim was denied upon reconsideration on June 10, 2013, (Tr. 94–101).

Plaintiff filed a timely request for a hearing, (Tr. 139), and on February 4, 2014, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"), (Tr. 34–62). The ALJ issued a decision on April 4, 2014, denying Plaintiff's claim. (Tr. 13–29). Plaintiff filed a request for review of the ALJ's decision, (Tr. 12), which was denied by the Appeals Council on August 7, 2014, (Tr. 6–11). Therefore, the April 4, 2014 ALJ decision became the final decision of the Commissioner on August 7, 2014.

Plaintiff's Complaint seeking judicial review and a remand of her case was filed in this Court on October 9, 2014. (Doc. No. 1). Plaintiff's Motion for Summary Judgment, (Doc. No. 13), was filed April 7, 2015, and Defendant's Motion for Summary Judgment, (Doc. No. 15), was filed April 22, 2015. The pending motions have been fully briefed and are ripe for adjudication.

B.    Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes,[1] at any time between June 1, 2012, when Plaintiff's disabling conditions commenced, and the date of the ALJ's decision on April 4, 2014. To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from June 1, 2012, through the date of his decision, April 4, 2014. (Tr. 19–20).

---

[1] Under the Social Security Act, 42 U.S.C. §§ 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether the claimant is engaged in substantial gainful activity—if yes, not disabled;

(2) whether the claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;

(3) whether the claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

(5) whether, considering the claimant's RFC, age, education, and work experience, he or she can make an adjustment to other work—if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i)–(v). In this case, the ALJ determined at step five that Plaintiff was not disabled. (Tr. 28–29).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since June 1, 2012, the alleged disability onset date. (Tr. 28). At step two, the ALJ found that Plaintiff had severe impairments of fibromyalgia; osteoarthritis of the hands, feet, and knees; asthma; and adjustment disorder with anxiety. (Id.). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform "'light' work requiring completion of only simple, routine, repetitive tasks involving following only one, two, or three step instructions, not performed at a fast or vigorous pace, and not requiring exposure to temperature extremes, concentrated smoke, dust, or similar irritants, or unprotected heights or dangerous machinery." (Tr. 26).

At the hearing, a vocational expert ("VE") testified regarding Plaintiff's past relevant work as a secretary. (Tr. 56–59). Pursuant to the VE's testimony, the ALJ found that Plaintiff cannot perform her past relevant work. (Tr. 26, 28). At the fifth and final step, the ALJ concluded, based on the VE's testimony, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 27–28). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between June 1, 2012, and the date of his decision on April 4, 2014. (Tr. 28).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to determining: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979). The Social Security Act provides: "The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" is "more than a scintilla and must do more than create a suspicion of the existence of a fact to be established. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

It is not appropriate for a reviewing court to weigh the evidence anew, or to substitute its judgment for that of the Commissioner, if the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345. Indeed, this is true even if the reviewing court disagrees with the outcome. Provided there is "substantial evidence" in the record to support the final decision below, the Court will uphold the final decision. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On appeal to this Court, Plaintiff argues that (1) the ALJ's RFC finding is not supported by substantial evidence; and (2) the ALJ's rejection of Plaintiff's credibility is not supported by substantial evidence. (Doc. No. 14 at 3).

A. The ALJ's RFC Finding

First, Plaintiff contends that the ALJ's RFC analysis was flawed. Specifically, Plaintiff argues that the ALJ's RFC assessment did not adequately consider or provide the requisite narrative discussion of her impairments resulting from her right shoulder impingement, lupus, or pain. (Doc. No. 14 at 4–6).

The plaintiff bears the burden of providing evidence to establish the degree to which her impairments limit her RFC. Plummer v. Astrue, No. 5:11-cv-006-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011); 20 C.F.R. § 404.1545(a)(3). However, the ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 416.946(c), 404.1527(d)(2), 404.1546(c). The RFC is an assessment of an individual's ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis, that is,

"8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. Id. The ALJ must also "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Id. In Mascio v. Colvin, the Fourth Circuit held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, Plaintiff contends that the ALJ improperly "dispensed with" Plaintiff's diagnosis of right shoulder impingement. (Doc. No. 14 at 4). The ALJ noted Plaintiff's diagnosis of right shoulder impingement and found that the condition was a medically determinable impairment. (Tr. 21). However, as the ALJ discussed, there was "no indication in the medical records or the subjective statements or testimony showing that [Plaintiff] reported significant functional limitations persisting for at least 12 consecutive months and attributable to right shoulder impingement," (id.), and Plaintiff does not contend otherwise. In order to be considered a severe impairment, the impairment must have lasted or must be expected to last for at least 12 consecutive months. See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii); Barnhart v. Walton, 535 U.S. 212, 218–19 (2002). Therefore, because there was no evidence indicating that the condition had lasted or could be expected to last for at least 12 consecutive months, the ALJ properly concluded that Plaintiff's shoulder impingement was not a severe impairment. The Court finds that the ALJ's analysis of this issue was sufficient and supported by substantial evidence.

Next, Plaintiff argues that the ALJ improperly rejected her allegations of lupus. (Doc. No. 14 at 4). The ALJ acknowledged and discussed Plaintiff's complaints of lupus as well as the medical records referring to lupus. For example, the ALJ noted that Dr. Beth Ann Jayne's January 2013 records included a diagnosis of lupus and that Plaintiff complained to Dr. Larry Gish and Dr. Rebecca Appleton of lupus.[2] (Tr. 17–18). However, neither subjective complaints nor a mere diagnosis of a condition, standing alone, are sufficient to establish the existence of a severe impairment. See SSR 96-3p; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that the diagnosis of a condition, alone, is insufficient to prove disability because there must also be "a showing of related functional loss"). The ALJ then discussed the record evidence contradicting Plaintiff's complaints of lupus, including Plaintiff's own report to Dr. Dijana T. Christianson[3] that she had a "possible" diagnosis of lupus and that a workup for that condition in 2006 was negative. (Tr. 18). The ALJ also discussed Plaintiff's lab results from November 2013 regarding lupus, which were negative. Therefore, the ALJ determined that, although the records show that Plaintiff repeatedly stated that she had lupus, there were no medical records in evidence to support those statements. (Tr. 21). "In short, there [were] no medical signs or laboratory findings supporting [Plaintiff's] purported lupus;" therefore, the ALJ concluded that the condition was not a severe impairment. (Id.). The Court finds that the ALJ's analysis was proper and supported by substantial evidence.

Plaintiff also argues that the ALJ did not properly analyze her reports of pain in his RFC

---

[2] Dr. Jayne was Plaintiff's primary care physician from at least February 2010 to January 2013. (Tr. 17). Dr. Gish examined Plaintiff in connection with her disability application on April 17, 2013. (Tr. 17). Dr. Appleton is a second primary care physician whom Plaintiff visited on one occasion in July 2013. (Tr. 18).

[3] Dr. Christianson is a rheumatologist whom Plaintiff visited on one occasion in November 2013. (Tr. 18–19).

assessment. (Doc. No. 14 at 6–7). Contrary to Plaintiff's argument, however, the ALJ discussed and analyzed Plaintiff's complaints of pain at great length and in great detail. The ALJ reviewed Plaintiff's complaints to Dr. Gish of leg pain, back pain, and pain "all over;" her complaint of pain to a psychologist; her reports of nerve, joint, and muscle pain to Dr. Appleton; her complaints of joint pain and myalgia to Dr. Christianson; her report of muscle, nerve, joint, and fibromyalgia pain to a state agency worker; and Plaintiff's testimony at the hearing that she has daily pain, including joint, nerve, back, and arm pain, and that she could not walk a block because of her leg pain. (Tr. 18–19). After considering each instance in which Plaintiff reported pain, the ALJ discussed how the objective medical evidence was inconsistent with Plaintiff's allegations of disabling pain. For example, the ALJ commented that Dr. Gish's physical examination of Plaintiff was "relatively benign" and that Plaintiff reported to Dr. Appleton that she did not take any medications to treat her pain because she had a high pain tolerance.[4] (Tr. 18, 23). "Pain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." Parris v. Heckler, 733 F.2d 324, 327 (4th Cir. 1984). After a lengthy discussion of all the medical evidence, the ALJ determined that Plaintiff's subjective complaints of pain were inconsistent with the medical evidence. (Tr. 24). Therefore, the ALJ found that Plaintiff's pain did not render her incapable of performing basic work related tasks. (Tr. 24–26). The Court finds that the ALJ sufficiently considered and explained his findings regarding Plaintiff's purported pain and that he appropriately accounted for all Plaintiff's limitations in his RFC finding. Accordingly, for the reasons discussed, the Court finds that the ALJ's RFC analysis and RFC finding are supported by substantial evidence.

---

[4] If a symptom can be reasonably controlled by medication or treatment, it is not disabling. Gross, 785 F.2d at 1166.

B. The ALJ's Credibility Finding

Finally, Plaintiff argues that the ALJ's assessment of her credibility is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ erroneously discredited her subjective complaints of pain and disabling limitations based solely on Plaintiff's failure to seek medical treatment.

The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays, 907 F.2d at 1456. Consequently, the ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

The ALJ must follow a two-step process to determine a claimant's credibility and whether she is disabled by pain or other symptoms. First, the regulations require "at the threshold a showing by objective evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594 (internal quotation marks omitted). If the claimant meets this threshold, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595. This evaluation must take into account:

> not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citing 20 C.F.R. §§ 416.929(c), 404.1529(c)).

In this case, the ALJ considered and discussed voluminous evidence, in addition to Plaintiff's lack of treatment, to support his credibility finding. In detailing Plaintiff's medical history, the ALJ noted that, although Plaintiff claimed her condition had progressively worsened, the medical records show that from approximately June 2011 to January 2013 Plaintiff did not receive significant treatment but returned to Dr. Jayne, her primary care physician, only for prescription refills, to inquire about prescription assistance, or for treatment of a routine urinary tract infection. (Tr. 22); see also Mastro v. Apfel, 270 F.3d 171, 179 (4th Cir. 2001) (finding that "significant gaps in the claimant's treatment" and the "paucity of medical evidence supporting [the claimant's] claim" weigh in favor of the ALJ's credibility determination). When she returned to Dr. Jayne in January 2013, Dr. Jayne reported that Plaintiff exhibited a "lack of focus on those things that would seem appropriate (complaints of dropping things and falling) and [was] more focused on receiving disability status." (Tr. 17, 317). At the January 2013 appointment, Dr. Jayne refused to opine that Plaintiff was disabled, and although Dr. Jayne had been Plaintiff's primary care physician since at least February 2010, Plaintiff never returned to her for further treatment. (Tr. 22, 317). Instead, Plaintiff visited Dr. Appleton six months later, in July 2013, "with a litany of purported extreme symptoms and limitations, presumably in an attempt to enlist [Dr. Appleton] in her quest for disability, since Dr. Appleton reported that [Plaintiff] 'wants disability'" and that Plaintiff "overtly stated that she was dissatisfied with Dr. Jayne because she would not support her quest for disability." (Tr. 23, 346). The ALJ further noted that "when Dr. Appleton informed [Plaintiff] that she did not 'fill out disability forms,' [Plaintiff] did not return to her for further treatment." (Tr. 23, 347). After reviewing all the evidence, the ALJ concluded that "it would be reasonable to expect that [Plaintiff] would still have requested treatment to alleviate her purported extreme symptoms and limitations, even if Dr. Jayne [or Dr. Appleton] refused to opine that

[Plaintiff] was disabled. Yet, she did not, which I can only conclude is a persuasive indicator that her purported symptoms and limitations were not of the extreme severity as she indicated." (Tr. 22–23). The ALJ's analysis of this evidence explains why the ALJ disbelieved Plaintiff's contention that the only reason she did not seek treatment was because she could not afford it.[5] As the ALJ recognized, Plaintiff had opportunities to receive treatment for her purported symptoms; yet, she chose to forego that treatment.

Furthermore, the ALJ considered the objective medical evidence that contravened Plaintiff's complaints, including earlier medical records in which Dr. Jayne indicated that Plaintiff had a history of symptom exaggeration. (Tr. 23). For example, Dr. Jayne noted in February 2010 that, "although Plaintiff complained of severe respiratory symptoms, she had normal respiration when distracted," and Dr. Jayne observed that Plaintiff had an "exaggerated physiological response" to reflux. (Tr. 23, 273). The ALJ also discussed Dr. Gish's observations that, although Plaintiff had "some" difficulty moving around, was coordinated but slow, and had a degree of reduced range of motion in her spine; Plaintiff's gait and station were normal, she had good strength, her reflexes were diminished but present, and she had a normal grasp. (Tr. 23, 292–93). The ALJ stated, "It is not persuasive that [Dr. Gish's] physical examination of [Plaintiff] would be so relatively benign if [Plaintiff] in fact had the purported extreme symptoms and limitations to which she testified." (Tr. 23). Ultimately, the ALJ opined that:

> it is not plausible that [Plaintiff] could have the extreme symptoms and limitations to which she testified, but, at the same time, manifestations of such purported symptoms and limitations were not apparent to [her treating physicians]. Furthermore, it is not persuasive that [Plaintiff] would simply endure, month after

---

[5] Contrary to Plaintiff's argument, her financial condition is irrelevant in determining whether she is disabled. See e.g., Naudain v. Apfel, 119 F. Supp. 2d 812, 817 (C.D. Ill. 2000) ("[E]conomic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether the claimant is eligible for DIB.").

      month, the purported extreme symptoms and limitations to which she testified, and not seek treatment to alleviate those purported symptoms and limitations.

(Tr. 22).

The ALJ thoroughly discussed each piece of evidence and concluded that Plaintiff's testimony as to the specific intensity, persistence, and limiting effects of her pain and other subjective symptoms were not credible in view of their inconsistency with the medical record as a whole. (Tr. 22). The Court finds that the ALJ properly assessed the credibility of Plaintiff's allegations of pain and disabling symptoms and that the ALJ provided specific reasons for discounting Plaintiff's testimony. Accordingly, the Court finds that the ALJ's credibility finding is supported by substantial evidence.

## IV.   CONCLUSION

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the Commissioner's final decision.

      **IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 13), is **DENIED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 15), is **GRANTED**; and
3. The Clerk of Court is directed to close this case.

Signed: March 8, 2016

Robert J. Conrad, Jr.
United States District Judge